# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4256 | **DATE** | March 6, 2002 |
| **CASE TITLE** | Curry v. Vencor Hospital and Green | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant Green's motion to dismiss the complaint for lack of personal jurisdiction [ ] is granted. ENTER MEMORANDUM OPINION. [10-1]

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| X | Notices MAILED by judge's staff. | MAR 1 4 2002 |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to _____ | 3/6/02 date mailed notice |
| KAM courtroom deputy's initials | | KAM mailing deputy initials |

Date/time received in central Clerk's Office (Reserved for use by the Court)

Document Number 24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES CURRY, as Special Administrator of the Estate of JULIA CURRY, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> VENCOR HOSPITAL, a Delaware corporation, and ROGER GREEN, M.D., <br><br> Defendants. | No. 01 C 4256 |

**MEMORANDUM OPINION**

Before the court is defendant Roger Green's motion to dismiss the complaint against him for lack of personal jurisdiction. For the reasons explained below, the motion is granted.

**BACKGROUND**

The plaintiff, Charles Curry, alleges that defendant Roger Green, M.D., negligently failed to order a lung biopsy on Curry's wife, Julia Curry, when radiological studies conducted between October of 1998 and March, 15, 1999 showed a mass on her lung. Mrs. Curry was later diagnosed with lung cancer and died from bronchopneumonia in October of 1999. The plaintiff filed this action for wrongful death against Dr. Green and defendant Vencor Hospital, which is not a party to this motion.

Dr. Green now moves this court to dismiss the claim against

him for lack of personal jurisdiction. There is no dispute that Dr. Green treated Mrs. Curry exclusively at his family practice clinic in Newport, Arkansas. The plaintiff argues, however, that Dr. Green had sufficient contacts with Illinois to subject him to personal jurisdiction in this state. For example, the plaintiff asserts that Dr. Green knew Mrs. Curry was a resident of Chicago and was only in Arkansas temporarily, but nevertheless, he actively solicited Mrs. Curry as his patient. After the Currys returned to Chicago, Dr. Green provided a referral for Mrs. Curry. Dr. Green points out that the referral he provided was for an oncologist located in Searcy, Arkansas. The plaintiff also argues that Dr. Green refilled prescriptions for Mrs. Curry's mother, Senoria Walker, while she was in Illinois. The plaintiff's evidence, however, shows that prescriptions for Mrs. Walker were filled by S & H Pharmacy, which is located not in Illinois, but in Augusta, Arkansas. See Plaintiff's Ex. F.

## **ANALYSIS**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). In deciding such a motion, the court may receive and consider evidence in the form of written materials from both parties, and will resolve all

factual conflicts in favor of the plaintiff. See <u>Nelson by Carson v. Park Indus., Inc.</u>, 717 F.2d 1120, 1123 (7th Cir.1983).

A federal district court sitting in diversity in Illinois has jurisdiction over a non-consenting, non-resident defendant if an Illinois state court would have jurisdiction. See <u>McIlwee v. ADM Indus., Inc.</u>, 17 F.3d 222, 223 (7th Cir.1994). "Three distinct obstacles to personal jurisdiction must generally be examined: (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law." <u>RAR</u>, 107 F.3d at 1276. As for state statutory law, the Illinois long-arm statute provides that an Illinois state court may exercise jurisdiction on any basis "now or hereafter permitted" by the state and federal constitutions. 735 ILCS 5/2-209(c). Because § 2-209(c) authorizes personal jurisdiction to the constitutional limit, we need only inquire whether the Illinois and federal constitutions permit personal jurisdiction over Dr. Green. See <u>RAR</u>, 107 F.3d at 1276. As to the state constitution,

> [t]he Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction. We are told that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." [<u>Rollins v. Ellwood</u>, 565 N.E.2d 1302, 1316 (Ill. 1990)].

<u>Id.</u> Typically, the courts look to the federal due process clause to construe the Illinois due process clause. See <u>McMurray v. Improvenet, Inc.</u>, No. 00 C 7137, 2001 WL 561376 at *1 (N.D. Ill.

May 22, 2001) (citing <u>PepsiCo, Inc. v. Marion Pepsi-Cola Bottling Co.</u>, No. 99 C 3939, 2000 WL 263973, at *7 (N.D. Ill. Mar. 6, 2000)).

The U.S. Constitution permits the court to exercise jurisdiction over defendants who have purposefully established "minimum contacts" with the forum state, <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985); <u>Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d 934, 943 (7th Cir. 2000), such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). What that means depends on whether general or specific jurisdiction is being asserted against the defendant. <u>RAR</u>, 107 F.3d at 1277.

"General jurisdiction ... is for suits neither arising out of or related to the defendant's contacts [with the forum], and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." <u>RAR</u>, 107 F.3d at 1277. Specific jurisdiction, on the other hand, refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. <u>See id.</u>

The plaintiff does not argue that Dr. Green has "continuous and systematic business contacts" with Illinois. <u>See</u> <u>RAR</u>, 107 F.3d at 1277 (noting that plaintiff waived any general jurisdiction

argument by failing to raise it). Indeed, Dr. Green is not licensed to practice medicine in Illinois and has never practiced medicine in Illinois. See Green Affidavit, ¶ 2. The plaintiff makes no contrary assertion except to note that Dr. Green continued to refill medicine prescriptions for Mrs. Curry's mother, Mrs. Walker, when Mrs. Walker went to Chicago in June of 1999. However, the evidence submitted by the plaintiff shows only that Mrs. Walker had prescriptions filled by a pharmacy located in Arkansas between January of 1999 and January of 2000. See Pl.'s Ex. F. In any event, refilling prescriptions for a single patient traveling to Illinois for a limited period of time cannot be sufficient to establish "continuous and systemic business contacts" in Illinois. Cf. Rogers v. Furlow, 699 F. Supp. 672, 676-77 (N.D. Ill. 1988) (finding that defendants were not "doing business" in Illinois even though a 10-12% of their patients were Illinois residents referred by Illinois doctors, and they hold medical seminars and make presentations in Illinois).

The next question is whether the state has specific jurisdiction over Dr. Green. Defendants need not be physically present in the jurisdiction to have sufficient "minimum contacts" with the state. See Hanson v. Denckla, 357 U.S. 235, 251-53 (1958). On the other hand, "the generalized foreseeability of the defendant's action causing harm in the forum is not sufficient for the exercise of jurisdiction." Central States, 230 F.3d at 943

(citing Burger King 471 U.S. at 474). The critical inquiry is whether the defendant's conduct and connection with Illinois are such that he should reasonably anticipate being haled into court in Illinois, id., because he has "purposely availed" himself "of the privilege of conducting activities" there. RAR, 107 F.3d at 1277. Moreover, the suit must "arise out of" or "be related to" these minimum contacts with the forum state. Id.

Dr. Green has only the slightest contact with Illinois: for several months he treated an Illinois resident who was temporarily living in Arkansas. It is undisputed that the treatment of Mrs. Curry took place entirely in Arkansas. Dr. Green did not even have contact with the doctors who treated Mrs. Curry in Illinois. See Deposition Transcript of Dr. Green, at 17. While the plaintiff argues that Dr. Green solicited Mrs. Curry as a patient, the solicitation did not occur in Illinois but Arkansas.[1] As to the argument that Dr. Green provided a referral to Mrs. Curry - the Currys themselves initiated the contact, not Dr. Green: "they telephoned Dr. Green's office and requested a referral for

---

[1] The plaintiff attaches an affidavit stating that Dr. Green knew the Currys were Chicago residents. Dr. Green testified at his deposition that Mrs. Curry had told him "she was from [Arkansas], had worked in Chicago, but [she] had retired and moved back to Arkansas, and bought a house in Beaumont." Deposition Transcript of Dr. Green, at 7. She told him that her reason for returning was to care for her parents so they would not have to go to a nursing home. Id. The plaintiff has not produced evidence showing that Dr. Green knew they were current Chicago residents. On the forms Mrs. Curry filled out at Dr. Green's office, she identified her address as being in Arkansas. See Dep. Tr. at 18. Mr. Curry, who appears to have been treated by Dr. Green as well, argues that he provided an Illinois address on an intake form. However, the form he produced only shows that Mr. Curry gave two street addresses and zip codes but did not include a city or state. See Pl.'s Ex. D.

radiation treatment. Dr. Green provided the referral." Plaintiff's Response to Defendant Roger Green, M.D.'s Motion to Dismiss, at 4. Moreover, the referral was clearly for a doctor in Arkansas. See Pl.'s Ex. E (referring Julia Curry to "Carti" at "Searcy"); Green's Deposition Transcript, p. 9 (explaining that Carti was located in Searcy, Arkansas).

Apart from failing to show that Dr. Green did anything in Illinois, the plaintiff has failed to show that the injury arose out of any of Dr. Green's supposed connections with Illinois. The wrongful death claim against him has nothing to do with a referral that he provided to Mrs. Curry, nor does it have anything to do with the prescriptions he allegedly refilled for Mrs. Walker while she stayed in Illinois. The claim arises out of Dr. Green's treatment of Mrs. Curry, which took place entirely in Arkansas.

The plaintiff insists, however, that personal jurisdiction exists because the tort occurred in Illinois. The situs of the tort is the state where the "last event takes place which is necessary to render the actor liable." Gray v. American Radiator & Standard Sanitary Corp., 176 N.E.2d 761, 762-63 (Ill. 1961); Mergenthaler Linotype, Co. v. Leonard Storch Enter., 383 N.E.2d 1379, 1384 (App. Ct. Ill. 1978). This is true even though the wrongful conduct occurred outside Illinois. Gray, 176 N.E.2d at 762. The plaintiff's argument thus boils down to this: Dr. Green could reasonably have anticipated being haled into Illinois court because he treated a

patient in Arkansas who ultimately died in Illinois as a result of his alleged negligence. In support of its argument, the plaintiff cites two cases finding personal jurisdiction where the defendant shipped products into Illinois or sold products to Illinois residents that were used in Illinois. See Mergenthaler, 383 N.E.2d at 1382 (finding personal jurisdiction over defendant in unfair competition claim where defendant shipped goods into Illinois); Gray, 176 N.E.2d at 765 ("As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products.").

However, treating a patient who might of her own initiative travel to any of the fifty states is entirely different from distributing products into a state to achieve financial benefit.[2] In Veeninga v. Alt, 444 N.E.2d 780, 782 (App. Ct. Ill. 1982), the plaintiff alleged that he had suffered injury from using a drug in Illinois that had been prescribed by an Indiana doctor. Noting that, as in Gray, the plaintiff's injury occurred in Illinois, the court nevertheless held that due process precluded finding personal jurisdiction over the doctor: "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy

---

[2] In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), the United States Supreme Court held that Oklahoma had no personal jurisdiction over a New York defendant, an automobile wholesaler and retailer, who sold a car to New York residents in New York. It was insufficient that the New York residents "happened to suffer an accident while passing through Oklahoma." Id. at 295.

the requirement of contact with the forum state." Id. (quoting Hanson, 357 U.S. at 253). In fact, a number of cases have held that personal jurisdiction does not exist over a nonresident doctor simply because he or she treated an Illinois resident outside Illinois and the treatment caused injury. See, e.g., Rogers v. Furlow, 699 F. Supp. 672 (N.D. Ill. 1988) (finding no personal jurisdiction even though letters and telephone calls were exchanged between the parties, and even though 10 - 12% of the defendant's patients were Illinois residents referred by Illinois doctors); Veeninga, 444 N.E.2d 780 (finding no personal jurisdiction even though Indiana doctor knew patient was an Illinois resident, prescribed a drug for him that was filled in Illinois, and patient alleged damage from use of the drug); Ballard v. Rawlins, 428 N.E.2d 532 (App. Ct. Ill. 1981) (finding no personal jurisdiction even though nonresident doctor called prescription in to an Illinois pharmacy and plaintiff claimed the doctor had solicited her as a patient).

As to the plaintiff's claim that Dr. Green solicited Mrs. Curry as a patient, there is no suggestion that he did so while she was in Illinois, and even if he did, we doubt that would be sufficient to subject him to personal jurisdiction in Illinois. In Hendry v. Ornda Health Corp., Inc., 742 N.E.2d 746 (App. Ct. Ill. 2001), the defendant actively solicited business in Illinois by advertising its surgical weight loss program on television and

sending a videotaped promotion to the plaintiff. Id. at 748. The court found that personal jurisdiction existed over the defendant, but not because of the solicitation.

> The corporate defendant did not merely solicit plaintiff. They did not merely passively accept the patronage of plaintiff. They sought plaintiff's business and physically brought her to Iowa to partake of their services. This entry into Illinois through the use of the hired limousine service provides sufficient contact with Illinois for us to conclude that the corporate defendants transacted business in Illinois and are subject to personal jurisdiction in this state.

Id. at 750. By contrast, Dr. Green did not enter Illinois, cause any one else to enter Illinois, send any mail to Illinois, or even place a single telephone call into Illinois for the purpose of treating Mrs. Curry.

Therefore, we hold that Dr. Green has not "purposefully availed" himself of "the privilege of conducting activities" in Illinois. It would be not be "fair, just, [or] reasonable" to require Dr. Green to defend this action in Illinois. See Rollins, 565 N.E.2d at 1316.

## CONCLUSION

For the reasons explained above, we dismiss the complaint against Dr. Green for lack of personal jurisdiction.

DATE:     March 6, 2002

-11-

ENTER: _____
John F. Grady, United States District Judge